UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Cause No. 1:05-CR-43 |
| ) | |
| KEVIN L. HICKS ) | |

## OPINION AND ORDER

This matter is before the Court on a Motion to Suppress filed by Defendant Kevin L. Hicks ("Hicks") on October 18, 2005. On December 19, 2005, the Court held an evidentiary hearing, where the Government and Hicks moved into evidence two exhibits stipulating facts. The Court took the Motion to Suppress under advisement awaiting briefs from the parties.

The Government filed its "Post-Hearing Response in Opposition to Defendant's Motion to Suppress" on January 5, 2006, with Hicks filing his "Memoranda in Support of First Motion to Suppress" on January 27, 2006. The Government then replied on February 7, 2006. For the following reasons, Hicks's Motion will be DENIED.

## FACTUAL BACKGROUND

Following his arrest on July 5, 2005, Hicks was charged in a single count indictment with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). The present motion relates to Hicks's July 5 encounter with the police and his subsequent arrest, with Hicks contending that police officers had no legal basis to stop him and that they entered a house without a warrant to seize him, all in violation of his Fourth Amendment rights. Both parties

have stipulated to the following facts:[1]

On July 5, 2005, at approximately 12:05 a.m., Officer David Tinsley of the Fort Wayne Police Department was dispatched to the residence at 4033 Buell in Fort Wayne, Indiana, in reference to a "domestic disturbance with a party armed with a gun." As Officer Tinsley approached the residence from the north, he noticed a black male, later identified as Hicks, wearing all black and walking away from the residence, advancing south on Buell and then east on Branning. Upon observing Hicks, Officer Tinsley contacted dispatch, who advised him that the perpetrator of the domestic disturbance, who was a black male wearing a black shirt and black pants, had just left 4033 Buell.

Officer Tinsley "caught up" with Hicks approximately thirty feet east of the corner of Branning and Buell. Because dispatch reported that the perpetrator had a gun, Officer Tinsley drew his gun as he approached, placing it in the "low ready" position. He then shined a light on Hicks, who was standing near a parked vehicle in a driveway and talking with another individual. When Officer Tinsley ordered Hicks to keep his hands visible and approach him, Hicks told the other individual, "Man, Dave, why'd you do me like this?" and then walked towards the side door of a residence located at the northeast corner of Branning and Buell. Although Officer Tinsley again ordered Hicks to stop and approach him, Hicks just looked at Officer Tinsley and continued walking towards the door.

By this time, Sergeant Lapp had arrived, and he ordered Hicks not to approach the residence and to comply with Officer Tinsley's orders. Hicks responded by opening the door,

---

[1] Although both parties moved to enter two exhibits into evidence, at times Hicks's brief differs from these stipulated facts. Hicks's so-called "facts," however, are not supported by the evidence in the record

entering the residence, and closing the door behind him. Officer Tinsley ran towards Hicks, ordering him to stop. Hicks then turned to face Officer Tinsley, looking at the officer through the door. Officer Tinsley ordered Hicks to exit the house, and when Hicks did not move, Officer Tinsley opened the door, grabbed Hicks's left wrist, and pulled him out of the residence.

Officer Tinsley then handcuffed Hicks for officer safety. As Officer Tinsley was about to start a pat down search of Hicks, Hicks informed the officer that he had a gun in his right front pants pocket. Officer Tinsley reached into Hicks's pocket and removed a fully loaded handgun. Hicks was then placed in a squad car. After the records bureau informed Officer Tinsley that Hicks was a known convicted felon, Officer Tinsley told Hicks that he was being arrested for being a convicted felon in possession of a handgun.

## **DISCUSSION**

While the Fourth Amendment protects "against unreasonable searches and seizures," U.S. Const. amend. IV, it does not prevent all encounters between police and citizens. A police-citizen encounter is categorized as either a voluntary encounter, investigatory stop, or arrest. *United States v. Johnson*, 910 F.3d 1506, 1508 (7th Cir. 1990). A voluntary encounter, which is "characterized by an officer seeking the citizen's voluntary cooperation through non-coercive questioning," does not implicate the Fourth Amendment, as the citizen's liberty is not restrained. *Id.* (citing *United States v. Mendenhall*, 446 U.S. 544, 553-55 (1980); *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968)). An investigatory stop, however, is considered a Fourth Amendment "seizure," during which an officer may briefly stop and frisk an individual if the officer has "specific and articuable facts sufficient to give rise to a reasonable suspicion" that the individual "has committed or is about to commit a crime." *Id.* (citing *United States v. Brignoni-Ponce*, 422 U.S.

3

873, 881-82 (1975); *Terry*, 392 U.S. at 21). Finally, an arrest requires police to have "probable cause to believe a person has committed or is committing a crime." *Id.* (citing *Beck v. Ohio*, 379 U.S. 89 (1964)).

Here, Hicks argues that when Officer Tinsley approached him with a gun drawn, shining a light on him, and ordering him to comply with the police, the encounter was a "seizure" that was not supported by reasonable suspicion. In the alternative, Hicks argues that this was a "voluntary encounter" and that he was entitled to walk away from the police; therefore, the police violated his Fourth Amendment rights when they ordered him to stop and then followed him into the house without a warrant. Finally, Hicks argues that he was arrested without probable cause, claiming that domestic disturbance is not a crime. Because of the officers' purported illegal conduct, Hicks claims that any evidence the police found during this encounter, namely the gun, must be suppressed as fruit of the poisonous tree. *See Wong Sun v. United States*, 371 U.S. 471, 484 (1963). These arguments will be discussed in turn.

To determine whether reasonable suspicion exists, a court examines "the totality of the circumstances known to the police at the time of the stop, including the experience of the officers and the behavior and characteristics of the suspect." *United States v. Lenoir*, 318 F.3d 725, 729 (7th Cir. 2003) (citing *United States v. Quinn*, 83 F.3d 917, 921 (7th Cir. 1996)). Even a defendant's innocent behavior can be considered; specifically, "police observation of an individual, fitting a police dispatch description of a person involved in a disturbance, near in time and geographic location to the disturbance establishes a reasonable suspicion that the

4

individual is the subject of the dispatch." *Id.* (citations omitted).[2]

Hicks argues that the dispatch lacked the specificity required to give Officer Tinsley reasonable suspicion. For example, he claims that "all we have is a black man in black clothing," that the "police officer did not know Mr. Hicks and did not determine the identity of Mr. Hicks," and that "the officer did not know if the anonymously claimed 'domestic disturbance' involved the commission of an actual crime." (Hicks Mem. 3, 5.) Contrary to Hicks's contentions, Officer Tinsley had enough information to give him reasonable suspicion. At the very moment that Officer Tinsley observed Hicks walking away from the residence at 4033 Buell, dispatch indicated that the perpetrator of the domestic disturbance, who matched the description of Hicks, was leaving the residence. *See United States v. Broomfield*, 417 F.3d 654, 655 (7th Cir. 2005) (citing *United States v. Wimbush*, 337 F.3d 947, 950 (7th Cir. 2003); *United States v. Price*, 328 F.3d 958, 959 (7th Cir. 2003)) (opining that officer had a reasonable basis for suspecting defendant committed a robbery when officer received a dispatch that a store was held up by a black man wearing dark clothing and brandishing a silver pistol who fled on foot, and when fifteen to twenty minutes later the officer observed the defendant, who matched the description, less than a mile from the store).

In addition, Hicks attempts to trivialize the dispatch for domestic disturbance, characterizing the alleged domestic disturbance as simply an "argument"; therefore, Hicks

---

[2] Hicks reads too much into this quotation from *Lenoir*, arguing that someone who fits the description of a police dispatch creates "nothing more" than a reasonable suspicion that the individual is the subject of the dispatch. (Mr. Hick's Mem. of Law in Supp. of his Mot. to Suppress 3-4.) Presumably, Hicks is arguing that a person matching a police dispatch description does not create a reasonable suspicion that the person *has committed or is about to commit a crime*. The *Lenoir* Court, however, uses this situation as a specific example of when otherwise innocent behavior can lead to reasonable suspicion of criminal activity under the totality of circumstances approach. *Id.* (citing *United States v. Juvenile TK*, 134 F.3d 899, 904 (8th Cir. 1998)).

claims that Officer Tinsley did not have reasonable suspicion to believe *a crime had been committed*. The initial dispatch, however, indicated that the perpetrator *was armed with a gun*, which would indicate that something more than a mere argument had just occurred. Given this information, Officer Tinsley did have reasonable suspicion to believe that some sort of criminal activity, such as a domestic battery, had occurred.

While Hicks claims that his encounter with law enforcement was a "seizure" that was not supported by reasonable suspicion, he also argues in the alternative that this encounter was completely voluntary, and thus he was "entirely within his rights to 'go on his way.'" (Hicks Mem. 5.) Assuming Officer Tinsley's initial approach in the driveway was a voluntary encounter with Hicks, when Hicks walked away from Officer Tinsley, it added to the officer's reasonable suspicion to stop Hicks. "Unprovoked flight from a police officer is suggestive of wrongdoing"; therefore, when coupled with other facts, flight can give police reasonable suspicion to stop a suspect. *United States v. Raibley*, 243 F.3d 1069, 1075 (7th Cir. 2001) (citing *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000)).

Here, Hicks not only walked away from Officer Tinsley when he asked Hicks to approach, but he also commented to the other individual in the driveway, "Man Dave, why'd you do me like this?"; both of these actions suggest wrongdoing. Hicks's behavior, when coupled with the fact that he matched dispatch's description of an armed perpetrator involved in a domestic disturbance, gave Officer Tinsley reasonable suspicion to demand that Hicks stop and comply with police orders. *See United States v. Breland*, 356 F.3d 787, 791 (7th Cir. 2004) (holding that although police officer initially had reasonable suspicion to stop defendant because defendant matched the description of a suspect, assuming that the initial encounter was purely

voluntary, the officer "undoubtedly had reasonable suspicion" to pursue defendant and conduct a *Terry* stop once the defendant fled).[3]

Furthermore, Officer Tinsley's entry into the residence to retrieve Hicks after he ignored police orders to stop cannot be challenged as Hicks does not have standing. Because "Fourth Amendment rights are personal rights which . . . may not be vicariously asserted," the defendant must establish a "legitimate expectation of privacy" in the residence to have standing to challenge police entry. *United States v. Barrerra-Martinez*, 274 F. Supp. 2d 950, 955-56 (N.D. Ill. 2003) (citing *Minnesota v. Carter*, 525 U.S. 83, 88 (1998)); *see also United States v. McNeal*, 77 F.3d 938, 945 (7th Cir. 1996) (quoting *Rakas v. Illinois*, 439 U.S. 128, 143 (1978)) (The "capacity to claim the protection of the Fourth Amendment depends . . . upon whether the person who claims the protection of the Amendment has a legitimate expectation of privacy in the invaded place.") When demonstrating this expectation of privacy, the defendant "bears the ultimate burden of proof and persuasion . . . . Reliance on vague, conclusory allegations is insufficient. Rather, a defendant must present 'definite, specific, detailed, and nonconjectural facts' to justify relief." *Barrerra-Martinez*, 274 F. Supp. at 955 (internal citations omitted) (finding that search of a garage did not violate Fourth Amendment, as defendant did not

---

[3] Hicks makes much of the fact that because he walked away from the police and did not run away, his behavior was not "flight" and thus could not give rise to reasonable suspicion. Given that Hicks ignored five separate attempts by law enforcement officers to get him to comply with orders, his behavior can properly be viewed as an attempt to evade the police. *United States v. Baskin*, 401 F.3d 788, 792 (7th Cir. 2005) (quoting *Wardlow*, 528 U.S. at 125) (opining that reasonable suspicion "must be based on common-sensical judgments and inferences about human behavior").

Likewise, the Government points to what Hicks did not do during the encounter as an indicator of his suspicious behavior. For example, the Government claims that Hicks never told police, "I know nothing, I'm not involved, I don't know what you're talking about." (Government's Post-Hearing Rep. in Opp'n to Def.'s Mot. to Suppress 2.) Because the actual events that occurred gave rise to a reasonable suspicion, the Court need not consider what did not happen. *See Broomfield*, 417 F.3d at 655 ("Whether you stand still or move, drive above, below, or at the speed limit, you will be described by the police as acting suspiciously should they wish to stop or arrest you. Such subjective, promiscuous appeals to an ineffable intuition should not be credited.")

demonstrate any proprietary interest in the garage or allege any "special relationship to the garage that would give him an expectation of privacy"); *see also United States v. Randle*, 966 F.2d 1209, 1213 (7th Cir. 1996) (holding that defendant's Fourth Amendment rights were not violated because he had no expectation of privacy in a friend's apartment).

Hicks seemingly tries to place the burden of proof and persuasion on the Government, arguing that the Government relied only on a docket sheet showing that Hicks was charged in state court with residential entry and presented no other evidence as to the ownership of the house or that Hicks "was not properly at this residence." (Hicks Mem. 7.) Hicks, however, who does have the burden, fails to present any evidence that he had a proprietary interest in the house or that he otherwise had a reasonable expectation of privacy in it. Instead, he asks the Court to infer that he was a houseguest from the fact that he was standing in the driveway talking to an individual when the police arrived and that the individual never told Hicks to leave the house after he entered it.

Such an inference is problematic for a number of reasons. Hicks does not present any evidence that this unidentified individual had a proprietary interest in the house such that he could have demanded that Hicks leave. Furthermore, even assuming Hicks had permission to be in the house, which is hardly a supportable inference on this record, he provides no details that would lead the Court to believe that he was simply, for example, visiting a friend. Hicks's claim that he was a houseguest is made even more improbable by the fact that the state court docket sheet does not list this residence as his address. Because Hicks has made no more than vague, conclusory allegations that he was a houseguest, he has not met his burden of showing a legitimate expectation of privacy; therefore, he has no standing to challenge Officer Tinsley's

8

entry into the house.[4]

Finally, Hicks argues that the police did not have probable cause to arrest him because "being involved in a 'domestic disturbance' is not a crime." (Hicks Mem. 2.) Hicks, however, does not clarify at what point he believes that his encounter with the police escalated to the level of an arrest. Therefore, the Court will analyze the encounter in its entirety, examining whether the manner in which officers conducted the stop was "reasonably related in scope to the circumstances which justified the interference in the first place." *United States v. Askew*, 403 F.3d 496, 508 (7th Cir. 2005).

When Officer Tinsley first encountered Hicks, it was after midnight, dark, and there was some indication that Hicks could be armed with a gun. So, naturally he had some concern for his personal safety; this concern led Officer Tinsley to draw his gun in the "low ready" position,[5] shine a light on Hicks, and order Hicks to approach him. At that point, an arrest had not yet occurred. *Id.* (quoting *United States v. Brown*, 366 F.3d 456, 461 (7th Cir. 2004)) ("We . . . have recognized that, because investigative detentions often pose a great risk of harm to the police, the 'mere use or display of force in making a stop does not necessarily transform a stop into an arrest

---

[4] Because the Court concludes that Hicks does not have standing, we do not have to consider Hicks's argument that there were no exigent circumstances to justify police entry into the home without a warrant. Nevertheless, if the officers knew that Hicks illegally entered the home, this residential entry in progress coupled with the earlier dispatch report that a suspect who matched Hicks's description was the armed perpetrator of a domestic disturbance would have given the officers "a reasonable belief that exigent circumstances require immediate action and there [was] no time to secure a warrant." *United States v. Jenkins*, 329 F.3d 579, 581 (7th Cir. 2003*)* (opining that exigent circumstances exist when the police "reasonably fear[ ] for the safety of someone inside the premises," particularly when the crime is in progress) (internal citations omitted). Officer Tinsley's report, however, does not indicate whether he knew if Hicks committed residential entry at the time he went to retrieve Hicks. *Id.* (quoting *United States v. Rivera*, 248 F.3d 677, 680-81 (7th Cir. 2001) ("[T]he exigent circumstances must be known to the officers 'at the time of the warrantless entry . . . .'").

[5] Hicks alleges in his brief that Officer Tinsley had his gun pointed at Hicks as he approached, but this conflicts with the stipulated evidence.

if the surrounding circumstances give rise to a justifiable fear for personal safety.'").

Likewise, no arrest occurred when Officer Tinsley retrieved Hicks from the house and handcuffed him for officer safety, given that Hicks failed to comply with five separate police orders.[6] *See United States v. Tilmon*, 19 F.3d 1221, 1226-27 (7th Cir. 1994) (finding that officers faced with a "fluid situation are . . . permitted to graduate their responses to the demands of the particular circumstances confronting them"); *United States v. Weaver*, 8 F.3d 1240, 1243 (7th Cir. 1993) (opining that handcuffing does not necessarily transform a stop into an arrest and is becoming "quite acceptable" in the context of a *Terry* stop).

Finally, given Hicks's attempt to evade the police and that officers found a gun on Hicks, the police were permitted to place Hicks in the back of a squad car while they contacted the records bureau. *See Tilmon*, 19 F.3d at 1226-27 ("[I]t is not necessarily improper to detain suspects in a police car during some kinds of investigatory stops."); *Pliska v. City of Stevens Point, Wis.*, 823 F.2d 1168, 1176 (7th Cir.1987) (concluding that a police officer may detain a suspicious individual briefly "in order to determine his identity or to maintain the status quo momentarily while obtaining more information.") Thus, while Hicks was "seized" for the purpose of conducting an investigatory stop, at no time was Hicks "under arrest" for committing a "domestic disturbance."

In any event, when the police eventually told Hicks that he was under arrest, they had probable cause to arrest him, not for domestic disturbance, but for felon in possession of a firearm, as they found a firearm in his possession and the records bureau had confirmed that Hicks had a felony record. Because Hicks told the police that he had a gun during the course of

---

[6] In fact, if officers were aware that Hicks illegally entered house, they would have had probable cause to arrest him at that time.

an investigatory stop that was supported by reasonable suspicion, the gun will not be suppressed as the fruit of a poisonous tree. *See Wong Sun v. United States*, 371 U.S. 471, 484 (1963).

## CONCLUSION

Based on the foregoing, Hicks's Motion to Suppress is DENIED.

Entered: This 22nd day of February, 2006.

s/ William C. Lee, Judge
United States District Court
Northern District of Indiana